**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANITA DOPORTO, individually and as Successor in Interest to SAMUEL GONZALES, deceased,**<br><br>        **Plaintiff,**<br><br>        **vs.**<br><br>**CITY OF TULARE, a municipal entity; OFFICER VINCE MEDINA, an individual; OFFICER RYAN RICHMOND, an individual; DOES 3 through 10, inclusive,**<br><br>        **Defendants.** | **1:13-CV-898-LJO-SKO**<br><br>**PRETRIAL ORDER**<br><br>**Motions in Limine**<br>**Filing Deadline:    Feb. 12, 2015**<br><br>**Motions in Limine**<br>**Response Deadline: Feb. 19, 2015**<br><br>**Motions in Limine**<br>**Hearing:        Date: Feb. 26, 2015**<br>**Time: 1:30 p.m.**<br>**Dept.: 4 (LJO)**<br><br>**Jury Trial:      Date: March 17, 2015**<br>**(5-day est.)     Time:  8:30 a.m.**<br>**Dept.: 4 (LJO)** |

The Court conducted a pretrial conference on February 4, 2015. Plaintiff Anita Doporto appeared by counsel Brian Dunn of The Cochran Firm and Dale K. Galipo of the Law Offices of Dale K. Galipo. Defendants the City of Tulare, Office Vince Medina, and Officer Ryan Richmond ("Defendants") appeared by counsel Bruce D. Praet of Ferguson, Praet and Sherman. Pursuant to Fed. R. Civ. P. 16(e), the Court issues this final pretrial order.

**A.    Summary**

This action arises out of the January 17, 2013 detention of decedent Samuel Gonzales (hereinafter "decedent"), by Tulare Police Department Officers Vince Medina and Ryan Richmond (hereinafter referred to as "Officer Medina" and "Officer Richmond", and collectively as the "Defendant Officers"), and the fatal shooting of decedent that occurred during the detention. The primary issues to be evaluated by the trier of fact concern the reasonableness of the involved officers' detention of the decedent and use of non-lethal force against decedent, the reasonableness of Officer Medina's use of lethal force against decedent, the reasonableness of  Officer Richmond's conduct in directing, encouraging, commanding, and/or otherwise causing Officer Medina to use lethal force

1

against decedent, the reasonableness of the tactical decisions and conduct of the involved officers during the encounter with decedent on January 17, 2013, the nature and extent of Plaintiff's and decedent's damages.

The officer-involved shooting of decedent occurred at approximately 7:06 p.m. on Thursday, January 17, 2013, at or around 190 South "F" Street in the City and County of Tulare. The acts, omissions, and conditions constituting the basis for liability in this action include, but are not necessarily limited to, the officers' alleged unreasonable seizure of decedent's person, through acts which included the Defendant Officers' use of non-deadly force against decedent, Officer Medina's use of deadly force against decedent, and Officer Richmond's conduct in directing, encouraging, commanding, and/or otherwise causing the use of deadly force against decedent, as well as the Defendant Officers' pre-shooting tactical conduct and decisions.

Defendants allege that efforts to detain  decedent were lawful and that the force used (including deadly) was reasonable and justified in light of decedent's extraordinary resistance and attempt to disarm Officer Richmond.  While any officer involved shooting can be second guessed, the Supreme Court has made it clear that the use of force cannot be viewed with the benefit of 20/20 hindsight.

The parties do not dispute that the doctrines of strict liability and res ipsa loquitur are not applicable to the claims alleged in this action.

Plaintiff is 63 years old. As a result of the officer-involved shooting of decedent, Plaintiff, the surviving biological mother of decedent, has lost the love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, guidance, services and support of decedent, and has incurred funeral and burial expenses. Plaintiff is also seeking an award of punitive damages against the Defendant Officers in their individual and personal capacities.

Decedent had no children at the time of his death. The police reports produced by the Defendants in this action indicate that decedent may have had Hepatitis C at the time of his death. Decedent was otherwise in good physical condition. Decedent attended Western High School in Tulare, but did not complete the eleventh grade. Decedent worked at Haagen Dazs for a period of time, and also worked as a farm/field laborer for periods of time. At the time of his death, decedent was earning income through the collection and recycling of recyclables.

**B.**     **Jurisdiction and Venue**

Plaintiff's First Cause of Action for Violations of Civil Rights arises under 42 U.S.C. § 1983, making subject matter jurisdiction proper under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's Second Cause of Action for Wrongful Death under 28 U.S.C. § 1367. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391 because the officer-involved shooting of decedent occurred in the County of Tulare and the Defendants reside in the County of Tulare. There is no dispute concerning jurisdiction or venue regarding the 42 U.S.C. § 1983 cause of action.

**C.**     **Jury/Court Trial**

The parties have made timely demands for a jury trial of all of the issues in this action.

**D.**     **Estimated Length of Trial**

Trial is estimated to take five to seven days.

**E.**     **Trial Date**

Trial will be **March 17, 2015** at 8:30 a.m. before U.S. District Judge Lawrence J. O'Neill in Department 4 (LJO). Due to this Court's impacted trial calendar, the parties are encouraged to consent to the conduct all further proceedings before a U.S. Magistrate Judge.

**F.**     **Undisputed Facts**

The following facts are undisputed:

1.     The officer-involved shooting of decedent occurred at approximately 7:06 p.m. on Thursday, January 17, 2013, at or around 190 South "F" Street in the City and County of Tulare.

2.     At all times relevant to this lawsuit, Officers Medina and Richmond were police officers employed by the City of Tulare and the Tulare Police Department.

3.     The actions and omissions of Officers Medina and Richmond at issue in this lawsuit were committed within the course and scope of their employment with the City of Tulare and the Tulare Police Department.

4.      The shooting was intentional.

5.      The intentional shooting was a seizure.

6.      The decedent died as a result of the gunshot wounds.

**G.      Disputed Factual Issues**

Plaintiff submits that the following issues are in dispute:

1.      Whether the detention was reasonable.

2.      Whether the Defendant Officers' use of non-deadly force against decedent violated decedent's rights under the Fourth Amendment to the United States Constitution;

3.      Whether Officer Medina's use of deadly force against decedent violated decedent's rights under the Fourth Amendment to the United States Constitution;

4.      Whether Officer Richmond's conduct in directing, encouraging, commanding, and/or otherwise causing Officer Medina to use deadly force against decedent violated decedent's rights under the Fourth Amendment to the United States Constitution;

5.      Whether Officer Medina, in employing deadly force against decedent, committed a battery upon the person of decedent;

6.      Whether Officer Richmond, in directing, encouraging, commanding, and/or otherwise causing the use of deadly force against decedent, committed a battery upon the person of decedent;

7.      Whether the Defendant Officers acted negligently with respect to their pre-shooting tactical decisions and conduct;

8.      Whether Officer Medina negligently employed deadly force against decedent; and

9.      Whether Officer Richmond, in directing, encouraging, commanding, and/or otherwise causing the use deadly force against decedent, acted negligently.

Defendants agree with Plaintiff's statement of disputed facts and add the following:

1.      Whether decedent posed an imminent threat to officers so as to make the use of force, including deadly, reasonable.

2.      The degree of comparative fault of decedent with respect to Plaintiff's claims of

4

negligence.

3.      Whether Plaintiff suffered any damages.

**H.**    **Disputed Evidentiary Issues**

**Plaintiff's Statement**:

On the following issues, Plaintiff intends to file motions in limine, seek bifurcation of issues, submit a trial brief, and/or seek the Court's direction and assistance in their resolution:

1.      Whether evidence regarding decedent's prior record of arrests, charges, and misdemeanor, felony, and juvenile convictions is admissible at trial;

2.      Whether evidence regarding decedent's prior periods of incarceration at juvenile and adult correctional facilities is admissible at trial;

3.      Whether evidence regarding any other "bad acts" of decedent, including but not limited to decedent's alleged commission of criminal offenses or similar "bad acts" not resulting in the filing of charges and/or convictions and violations of parole, is admissible at trial;

4.      Whether evidence regarding decedent's parole status at the time of the officer-involved shooting incident is admissible at trial;

5.      Whether evidence regarding decedent's affiliations with and/or membership in any street gang is admissible at trial;

6.      Whether evidence concerning whether decedent had Hepatitis C at the time of his death is admissible at trial;

7.      Whether evidence regarding decedent's possession of a pocketknife on the date of the officer-involved shooting incident is admissible at trial;

8.      Whether evidence concerning the fact that the involved defendant officers were not disciplined or charged with any crimes as a result of the officer-involved shooting incident involving decedent is admissible at trial;

9.      Whether evidence concerning the presence of drugs and/or alcohol in the decedent's system at the time of the officer-involved shooting and/or the presence of drugs and/or alcohol in decedent's system at the time of the autopsy of decedent is admissible at trial;

10.     Whether evidence regarding decedent's prior use of drugs and/or alcohol is admissible at trial; and

11.     Whether evidence regarding Plaintiff's prior record of arrests, charges, misdemeanor, felony, and juvenile convictions, and other "bad acts" is admissible at trial.

Plaintiff believes that all of the foregoing disputed evidentiary issues can be adequately addressed through motions in limine, an order bifurcating the issues of liability and damages, and/or the giving of limiting instructions.

**Defendants' Statement:**

Defendants will be addressing all of Plaintiff's evidentiary issues in response to any *in limine* motions and/or at trial, if necessary.  Defendants, however, believe that all of the evidentiary issues raised by Plaintiff are in fact admissible on myriad grounds.  Similarly, Defendants would be opposed to any attempt to bifurcate liability from damages.

I.      **Relief Sought**

**Plaintiff's Statement:**

Plaintiff seeks compensatory damages against all Defendants, and punitive damages against Defendant Officers Richmond and Medina in their individual and personal capacities.

With respect to the 42 U.S.C. § 1983 cause of action alleged in Plaintiff's First Amended Complaint for Damages (Dkt. No. 14), Plaintiff, in her capacity as Successor in Interest to decedent, seeks damages for the mental and physical pain, suffering, anguish, fright, nervousness, anxiety, grief, shock, humiliation, indignity, embarrassment, and apprehension that decedent suffered prior to his death.

With respect to the wrongful death cause of action alleged in Plaintiff's First Amended Complaint for Damages (Dkt. No. 14), Plaintiff seeks economic and non-economic damages against all Defendants resulting from the loss of the love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, guidance, services and support of decedent, as well as funeral and burial expenses incurred as a result of the death of decedent.

**Defendants' Statement**:

In addition to the fact that Defendants contend that there is no liability under state or federal law, Defendants contend that Plaintiff's damages, if any, are minimal. Decedent was an unemployed, 42 year old semi-transient, who was a wanted parolee at large at the time of this incident. Decedent contributed no financial support to Plaintiff and Plaintiff's relationship with decedent during his adult life (most of which was spent in prison) was minimal at best. Moreover, to the extent that Plaintiff may claim any damages, such would be substantially offset by the extraordinary amount of contributory fault of decedent.

To the extent that Plaintiff may continue to seek punitive damages against any individual Defendant, it will be requested that such damage phase, if at all, be bifurcated.

**J.**   **Points of Law**

**Plaintiff's Points of Law**:

Plaintiff's First Amended Complaint for Damages (Dkt. No. 14) alleges a 42 U.S.C. § 1983 claim for violations of decedent's Fourth Amendment rights arising out of the Defendant Officers' unreasonable detention of the decedent, the use of non-deadly force against decedent prior to the officer-involved shooting incident, Officer Medina's use of deadly force against decedent, and Officer Richmond's conduct in directing, encouraging, commanding, failing to prevent and/or otherwise causing the use of deadly force against decedent.

The reasonableness of any seizure, including the use of force, is determined by "'careful[ly] balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The Court must "'balance the amount of force applied against the need for that force.'" *Bryan v. MacPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). "[A]ll force – lethal and non-lethal – must be justified by the need for the specific level of force employed." *Id.* at 825. Even where some force is justified, the amount actually used may be excessive. *Santos v. Gates*, 287 F.3d 846, 853-54 (9th Cir. 2002).

Because this case involves the greatest possible amount of force, it requires the utmost

justification:

> The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment.

*Garner*, 471 U.S. at 9. Four years later, in *Graham*, the Court held that all claims of excessive force

must be evaluated under the standard of objective reasonableness, in light of the facts and

circumstances confronting the officers "from the perspective of a reasonable officer on the scene, rather

than with the 20/20 vision of hindsight." 490 U.S. at 396-97. "Moreover, whenever practicable, a

warning must be given before deadly force is employed." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th

Cir. 1997). "In deadly force cases, [w]here the suspect poses no immediate threat to the officer and no

threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly

force to do so." *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).

A "simple statement by an officer that he fears for his safety or the safety of others is not

enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d

1272, 1281 (9th Cir. 2001). Nor is a "[a] desire to resolve quickly a potentially dangerous situation." *Id.*

Further, "police are 'required to consider what other tactics if any were available'" to handle the

situation. *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000).

Thus, another factor to consider is the availability of alternative methods to effectuate an arrest or

overcome resistance. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

With respect to the conduct of Officer Richmond, who did not fire his firearm at decedent, but

is alleged to have directed, encouraged, commanded, and/or otherwise caused the use of deadly force

against decedent:

> Section 1983 provides, in pertinent part, that "(e)very person who, under color of any statute of any state . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." [Citation omitted.] A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. [Citation omitted.] Moreover, personal participation is not the only predicate for section

1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

*Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n. 12 (9th Cir. 2007) (citing and quoting *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996); *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004)) ("An officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation. [Citation omitted.] '[I]ntegral participation does not require that each officer's actions themselves rise to the level of a constitutional violation.' [Citation omitted.] But it does require some fundamental involvement in the conduct that allegedly caused the violation.").

Plaintiff's First Amended Complaint for Damages (Dkt. No. 14) additionally alleges a state law wrongful death claim based on battery and negligence. With respect to Plaintiff's claim for wrongful death based on battery, in California, "[a] state law battery claim is a counterpart to a federal claim of excessive use of force," and similar standards apply. *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009); *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1274-75 (1998) (looking to the standards of a federal excessive force claim to determine the burden of proof for a state law battery claim against an officer). In California, a peace officer can be liable for battery where he or she intentionally touches a person or *causes* a person to be touched to be touched. *See* Judicial Council of California Civil Jury Instructions ("CACI"), Instruction No. 1305.

With respect to Plaintiff's claim for wrongful death based on negligence, the California Supreme Court recently reaffirmed that under California negligence law, "peace officers have a duty to act reasonably when using deadly force." *Hayes v. County of San Diego*, 57 Cal.4th 622, 629 (2013); *see also Munoz v. Olin*, 24 Cal.3d 629, 634 (1979); *Grudt v. City of Los Angeles*, 2 Cal.3d 575, 587 (1970). The question of whether the officers were negligent must be considered in light of the "totality of circumstances . . . including the officers' actions preceding the use of deadly force . . ." that are part of the "continuum of circumstances surrounding a single use of deadly force." *Hayes*, 57 Cal.4th at 637-38. In California negligence cases, multiple causes of a plaintiff or decedent's harm do not

1   preclude a finding of liability as to any particular defendant. *See* CACI, Instruction No. 431 ("A

2   person's negligence may combine with another factor to cause harm. If you find that [defendant's]

3   negligence was a substantial factor in causing [plaintiff's] harm, then [defendant] is responsible for the

4   harm. [Defendant] cannot avoid responsibility just because some other person, condition, or event was

5   also a substantial fact in causing [plaintiff's] harm.").

6         P.O.S.T. standards and internal Tulare Police Department policies and procedures are evidence

7   of and "bear[] on the standard of care that the [Tulare Police Department] thought appropriate to insure

8   the safety of others . . .", its officers, and adherence to a policy of the reasonable use of deadly force.

9   *See Dillenbeck v. City of Los Angeles*, 69 Cal.2d 472, 477-78 (1968) (citing *Powell v. Pacific Elec. Ry.*

10   *Co.*, 35 Cal.2d 40, 46 (1950); *Beal v. Blumenfeld Theatres, Inc.*, 177 Cal.App.2d 192, 194 (1960);

11   *Davis v. Johnson*, 128 Cal.App.2d 466, 472 (1954)) ("[t]he [] rules of an employer are [] admissible as

12   evidence that due care requires the course of conduct prescribed in the rule."); *see also Grudt*, 2 Cal.3d

13   at 588 (noting that failure to follow policies is evidence of negligence).

14         **<u>Defendants' Points of Law</u>:**

15         Defendants agree that this case will essentially come down to a few related questions:

16       1.  Was the use of non-lethal force by Officers Medina and Richmond during their attempts to

17           lawfully detain decedent objectively reasonable under the totality of the circumstances?

18           *Graham v. Connor*, 490 U.S. 386, 396 (1989)? The law on this issue is adequately set forth

19           in Ninth Circuit Model Jury Instruction 9.22 as modified to conform to the facts of this case.

20       2.  Did the use of force by Officers Medina and Richmond constitute an unlawful battery under

21           state law?  The basic question of battery is set forth in BAJI Instruction 7.54; *Edson v.*

22           *Anaheim*, 63 Cal. App. 4th 1269 (1998).

23       3.  Was the use of lethal force by Officer Medina while decedent was attempting to disarm

24           Officer Richmond objectively reasonable under the totality of the circumstances?  [Same

25           standard]

26       4.  Were the split-second tactics used by the officers somehow "negligent"? *Hayes v. County*

27           *of San Diego*, 57 Cal.4th 622, 629 (2013).  If so, what level of contributory or comparative

28           fault is attributable to decedent?

5.   It is reasonably anticipated that Plaintiff will attempt to argue that officers should have considered or somehow utilized some less intrusive application(s) of force.  However, such argument(s) are precluded by applicable law.  *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994); *Gregory v. Maui*, 523 F.3d 1103 (9th Cir. 2008)

**K.**   **Abandoned Issues**

**Plaintiff's Statement:**

Plaintiff does not, at this time, intend to abandon any issues.

**Defendants' Statement:**

Although it would certainly simplify this case to limit it to a straightforward "excessive force" issue, Plaintiff is apparently going to retain parallel state claims which will require addressing issues of comparative fault.  Defendants are not abandoning their defense of qualified immunity.

**L.**   **Witnesses**

**Plaintiff's List of Witnesses:**

Plaintiff intends to call the following witnesses to testify at the trial of this matter:

1.   Anita Doporto – Plaintiff;

2.   Officer Vince Medina – Defendant and percipient witness;

3.   Officer Ryan Richmond – Defendant and percipient witness;

4.   Guillermina Garcia – Employee of La Palma Bakery;

5.   Roel Garcia – Employee of La Palma Bakery;

6.   Sophia Garcia – Employee of La Palma Bakery;

7.   Robert Methvin – Percipient witness;

8.   Laura Gray – Percipient Witness;

9.   Baron Welch – Percipient Witness;

10.   Stephanie Aleman –Percipient Witness;

11.   Detective Caleb Swanson – Investigation of officer-involved shooting of decedent;

12.   Burr Hartman, D.O., Ph.D. – Medical examiner who performed autopsy on decedent;

13.   Gary A. Walter, M.D. – Medical examiner expected to testify regarding the autopsy

performed on decedent;

14. Criminalist Kara Ward – Collection/analysis of evidence in connection with the officer-involved shooting of decedent;

15. Latent Print Analyst Vicente Guerrero – Examination/Processing of Officer Richmond's duty firearm for Latent Prints;

16. Roger Clark – Plaintiff's expert witness;

**Defendants' List of Witnesses:**

Defendants intend to call the following witnesses to testify at the trial of this matter:

1. Officer Vince Medina

2. Officer Ryan Richmond

3. Methvin Gray, civilian witness

4. Guadalupe Doporto, decedent's brother

5. Criminalist Kara Ward

6. George Williams, Defendants' expert witness.

**M.    Trial Exhibits**

**1.    Exhibits Identified by Parties**

**Plaintiff's List of Exhibits:**

Plaintiffs expect to offer the following exhibits at the trial of this matter:

1. Holster worn by Officer Richmond during the officer-involved shooting of decedent;

2. Tulare County Sheriff's Department OIS Crime Report No. 13-0735;

3. Tulare County Sheriff's Department Evidence Reports;

4. California Department of Justice Reports;

5. Tulare County Sheriff's Department Crime Scene Log, Legend, and Sketches/Diagrams;

6. Call for Service Record;

7. Tulare Police Department Report N0. TG1300496;

8. Fire and Ambulance Logs;

9. Final Autopsy Report No. A13-000035;

10.   Autopsy Diagrams associated with Final Autopsy Report No. A13-000035;

11.   Photographs of involved officers;

12.   Photographs of involved officers' duty weapons;

13.   Photographs of the scene of the officer-involved shooting of decedent and the surrounding area;

14.   Photographs of evidence at the scene of the officer-involved shooting of decedent and in the surrounding area;

15.   Photographs of decedent at the scene of the officer-involved shooting incident;

16.   Photographs of decedent taken at autopsy;

17.   Audio recording of dispatch calls;

18.   Audio recording of radio traffic;

19.   Excerpts from P.O.S.T. Learning Domain 20;

20.   P.O.S.T. Learning Domain 37;

21.   Excerpts from Tulare Police Department Policy Manual re Use of Force, Conducted Energy Device, Foot Pursuit Policy;

22.   Training records re Officer Vince Medina;

23.   Training records re Officer Ryan Richmond;

24.   Decedent's medical records from Tulare Regional Medical Center dated January 17, 2013;

25.   Certificate of Death for decedent;

26.   Deposition transcript of Officer Vince Medina (for impeachment purposes only);

27.   Deposition transcript of Officer Ryan Richmond (for impeachment purposes only);

28.   Deposition transcript of George Williams (for impeachment purposes only);

29.   Deposition transcript of Gary A. Walter, M.D. (for impeachment purposes only);

30.   Audio recording of interview of Officer Ryan Richmond (for impeachment purposes only);

31.   Transcript of audio recording of interview of Officer Ryan Richmond (for impeachment purposes only);

32.     Audio recording of interview of Officer Vince Medina (for impeachment purposes only);

33.     Transcript of audio recording of interview of Officer Vince Medina (for impeachment purposes only);

34.     Audio recording of interviews of Guillermina Garcia, Roel Garcia, and Sophia Garcia (for impeachment purposes only);

35.     Transcripts of audio recording of interviews of Guillermina Garcia, Roel Garcia, and Sophia Garcia (for impeachment purposes only);

36.     Audio recording of interviews of Robert Methvin and Laura Gray (for impeachment purposes only);

37.     Transcripts of audio recording of interviews of Robert Methvin and Laura Gray (for impeachment purposes only);

38.     Audio recording of death notification to Plaintiff;

39.     Transcript of audio recording of death notification to Plaintiff;

40.     Family photographs of decedent;

41.     Records from Sterling & Smith Funeral Home relating to funeral and burial expenses incurred by Plaintiff;

42.     Correspondence between Plaintiff and decedent;

43.     Mother's Day cards given to Plaintiff by decedent;

44.     Birth Certificate for decedent;

45.     "Drifting on a Memory" drawing;

**Defendants' List of Exhibits:**

Defendants expect to offer the following exhibits at the trial of this matter:

1.   Audio of 911 calls (with transcript)

2.   Audio of Radio transmissions (with transcripts)

3.   Toxicology results of decedent

4.   Decedent's criminal history (CII)

5.   DNA test results

6.   Scene photographs

### 2.   **Duty to Pre-Mark Exhibits**

No later than **March 2, 2015**, the parties shall exchange their proposed exhibits to the extent they have not done so. The parties' counsel shall meet and conduct an exhibit conference no later than **March 6, 2015** to pre-mark and examine trial exhibits and to prepare exhibit lists, to the extent they have not done so already. All joint exhibits (i.e., any documents which the parties agree will be **admitted into evidence for all purposes**) shall be pre-marked with the prefix "J" and numbered sequentially starting with J-1. All of Plaintiffs' exhibits (not jointly agreed upon) shall be pre-marked with the prefix "P" and numbered sequentially starting with P-1. All defense exhibits (not jointly agreed upon) shall be pre-marked with the prefix "D" and numbered sequentially starting with D-100.

### 3.   **Exhibit Lists**

No later than **March 11, 2015**, the parties shall file and serve their final lists of respective pre-marked exhibits. Only those exhibits that are identified in the parties' joint pretrial statement may appear on the final exhibit list.  **Further, no exhibit, other than those listed in the final exhibit list, may be admitted at trial unless the parties stipulate or upon a showing that this order should be modified to prevent "manifest injustice."**  Fed. R. Civ. P. 16(e).

### 4.   **Submission of Trial Exhibits**

No later than **March 11, 2015**, the parties shall submit to the clerk's office all pre-marked trial exhibits. The parties' counsel should note that, pursuant to Local Rule 281(b)(11), only those exhibits listed in the parties' pretrial statement will be permitted to be offered into evidence. Therefore, any exhibits submitted which are not listed in the pretrial statement will not be admitted without a showing of good cause or the parties' stipulation.

### 5.   **Objections**

This Court will address objections to exhibits as they arise during trial.

### 6.   **Discovery Documents**

**Plaintiff's Statement:**

At this time, Plaintiff does not intend to offer any portions of depositions, answers to

interrogatories, or responses to requests for admission at the trial of this matter, other than as may be necessary for impeachment purposes.

**Defendants' Statement:**

Except as required to refresh the memory of a witness/party or for impeachment purposes, Defendants do not intend to offer any discovery responses or deposition testimony at trial.

**7.    Deposition Testimony**

Deposition testimony shall be designated by page and line number, with such designation to be filed and served no later than **February 25, 2015**. Any counter-designation as to the same deposition (also set out by page and line number) shall be filed and served no later than **March 3, 2015**. The original certified transcript of any deposition identified in a designation or counter-designation shall be lodged with the clerk's office no later than **March 6, 2015**, if not previously lodged with the Court.

This Court will address objections to deposition testimony as they arise during trial.

**8.    Duty of the Parties' Counsel**

During the course of trial, counsel shall meet with the Court each morning to advise as to which items of evidence will be used that day and which have not already been admitted into evidence. The Court will rule on any objections to the extent possible prior to the commencement of trial each day out of the presence of the jury. If such ruling depends on the receipt of testimony or other evidence, the Court will rule as appropriate upon the receipt of such testimony or evidence. If evidentiary problems are anticipated, counsel are required to notify the Court immediately that a hearing outside the jury's presence will be required. During the time set for conducting the trial before the jury, the Court will not hear argument outside the jury's presence on such matters.

**9.    Post-Trial Exhibit Retention**

Counsel who introduced exhibits at trial shall retrieve the original exhibits from the courtroom deputy following the verdict in the case. The parties' counsel shall retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

**N.    Trial Briefs**

Any trial briefs shall be filed and served no later than **March 9, 2015** and otherwise pursuant to

this Court's Local Rule 285.

**O.     Motions in Limine**

The parties anticipate filing some pretrial motions. The Court ORDERS the parties' counsel to meet and confer on anticipated motions in limine and to distill evidentiary issues. This Court FURTHER ORDERS the parties to file motions in limine as to only important, critical matters, keeping in mind that most evidentiary issues can be resolved easily with a conference among the Court and counsel. If this Court surmises that the parties have filed motions in limine without meaningful, genuine meeting and conferring, this Court will strike the motions in limine and not hear them.

The parties, after meaningful and genuine meet and confer efforts, shall file and serve their truly disputed motions in limine no later than **February 12, 2015**. Any response to motions in limine shall be filed no later than **February 19, 2015**. This Court will conduct a hearing on the motions in limine on **February 26, 2015** at 3:00 p.m. in Department 4 (LJO) of this Court, unless this Court determines to rule on the motions in limine on the record.

**Moving and opposition papers must be brief, succinct, and well-organized.**

**P.     Further discovery or motions**

The parties do not anticipate further discovery or motions.

**Q.     Joint Statement of the Case**

The parties submit the following joint statement of the case:

This case arises out of an officer-involved shooting incident which occurred on January 17, 2013, at or around 190 South "F" Street in the City and County of Tulare.

The Plaintiff in this case is Anita Doporto, the mother of decedent. Plaintiff contends that the Defendant Officers unreasonably detained her son and used excessive and unreasonable force against her son.  Plaintiff is seeking damages related to the death of her son.

The Defendants in this case are the City of Tulare, Officer Vince Medina, and Officer Ryan Richmond. The Defendants contend that the detention of decedent was lawful and that the use of force was reasonable under the totality of the circumstances presented to them at the time.

**R.     Stipulations**

1    The parties do not anticipate any stipulations.

2  **S.**    **Amendments-Dismissals**

3    The parties offer no amendments or dismissals.

4  **T.**    **Settlement negotiations**

5    The parties do not believe that either further settlement negotiations between themselves or a

6  court settlement conference would be helpful to resolution of this action.

7  **U.**    **Agreed Statement of Facts**

8    The parties do not believe that the presentation of all or part of this case upon an Agreed

9  Statement of Facts is feasible or advisable.

10  **V.**    **Proposed Jury Voir Dire**

11    The parties shall file and serve any proposed jury voir dire no later than **March 9, 2015**.

12  **W.**    **Proposed Jury Instructions and Verdict Form**

13    The parties shall serve their proposed jury instructions and verdict forms on one another no later

14  than **February 23, 2015**. The parties shall conduct a conference to address their proposed jury

15  instructions and verdict forms no later than **March 2, 2015**. At the conference, the parties **SHALL**

16  reach agreement on jury instructions and a verdict form for use at trial. The parties, no later than

17  **March 9, 2015**, shall file and serve all agreed-on jury instructions and an agreed-on verdict form and

18  identify such as the agreed-on jury instructions and verdict form.

19    No later than **March 9, 2015**, plaintiff may file and serve no more than 10 proposed jury

20  instructions and identify such as jury instructions upon which the parties could not agree. No later than

21  **March 9, 2015**, defendants may file and serve up to 10 proposed jury instructions and identify such as

22  jury instructions upon which the parties could not agree. **Without a prior order, this Court will not**

23  **consider additional proposed jury instructions past the first 10.**

24    This Court expects and specifically orders the parties to file an agreed-on special verdict form

25  no later than **March 9, 2015**. If a party seeks additions to an agreed-on verdict form, that party may file

26  and serve, no later than **March 9, 2015**, a proposed verdict form which includes the agreed-on portions

27  and additions which are clearly indicated on that party's proposed verdict form. This Court will strike

28  and will not accept separately proposed verdict forms upon which the parties do not agree.

All jury instructions shall indicate the party submitting the instruction (i.e., joint/agreed-on, plaintiff's or defendants'), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the text of the instruction, and the legal authority supporting the instruction.

All jury instructions and verdict forms shall be e-mailed as a Microsoft Word attachment to **ljoorders@caed.uscourts.gov and lcoffman@caed.uscourts.gov** no later than **March 9, 2015. Jury instructions and verdict forms will not be given or used unless they are so e-mailed to the Court. The Court will not accept a mere list of numbers of form instructions from the Ninth Circuit Model Jury Instructions, CACI, BAJI or other instruction forms. The proposed jury instructions must be in the form and sequence which the parties desire to be given to the jury. All blanks to form instructions must be completed. Irrelevant or unnecessary portions of form instructions must be omitted.**

Ninth Circuit Model Jury Instructions SHALL be used where the subject of the instruction is covered by a model instruction. Otherwise CACI or BAJI instructions SHALL be used where the subject of the instruction is covered by CACI or BAJI. **All instructions shall be short, concise, understandable, and neutral and accurate statements of the law. Argumentative or formula instructions will not be given and must not be submitted.** Quotations from legal authorities without reference to the issues at hand are unacceptable.

The parties shall, by italics or underlining, designate any modification of instructions from statutory or case authority, or any pattern instruction, such as the Ninth Circuit Model Jury Instructions, CACI, BAJI or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

No later than **March 9, 2015**, the parties may file and serve meaningful written objections to disputed jury instructions proposed by another party. All objections shall be in writing, shall set forth the proposed instruction objected to in its entirety, shall specifically set forth the objectionable matter in the proposed instruction, and shall include a citation to legal authority to explain the grounds for the objection and why the instruction is improper. A concise argument concerning the instruction may be included. Where applicable, the objecting party shall submit an alternative proposed instruction

covering the subject or issue of law.

**X.   Separate trial of issues**

Plaintiff requests bifurcation of the issues of liability and damages.

The request to bifurcate liability from damages is denied. However, to the extent that punitive damage issues remain, they are bifurcated.

For Plaintiff to be awarded punitive damages, the jury must first find that Defendants' conduct was malicious, wanton, or oppressive. *See* Ninth Circuit Model Civil Jury Instructions, Instruction No. 5.5 (citing *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005)). The Court will bifurcate the trial as to punitive damages until the jury makes a finding of fact that would entitle the jury to award Plaintiff punitive damages. The parties shall not mention "punitive damages" until the jury makes a finding of fact that the Court determines would entitle Plaintiff to pursue punitive damages.

**Y.   Impartial Experts–Limitation of Experts**

The parties do not believe that the appointment of impartial expert witnesses or a limitation on the number of expert witnesses expected to testify at trial is advisable in this case.

**Z.   Attorney Fees**

If Plaintiff prevails on the 42 U.S.C. § 1983 cause of action alleged in Plaintiff's First Amended Complaint for Damages (Dkt. No. 14), Plaintiff will file a motion for an award of attorneys' fees pursuant to 42 U.S.C. § 1988 within twenty-eight (28) days after entry of final judgment.

**Defendants' Statement:**

In the event of a Plaintiff's verdict, Defendants will address any claim for attorneys' fees, including an objection to the participation of two law firms on behalf of a single Plaintiff.

**AA.   Trial Exhibits**

**Plaintiff's Position:**

Plaintiff believes that special handling of the holster worn by Officer Ryan Richmond during the officer-involved shooting of decedent, which Plaintiff intends to offer as an exhibit at trial, will be required. Plaintiff is amenable to the Court retaining the trial exhibits pending any appeal and decision

on appeal.

**Defendants' Position:**

Defendants do not anticipate any special handling issues and remain confident that any logistical/safety concerns with the holster worn by Officer Richmond can be easily accommodated.

**BB.** **Trial Protective Order**

The parties do not believe a trial protective order will be necessary.

**CC.** **Claims of Privilege**

The parties do not claim any privilege against disclosure in this matter.

**DD.** **Compliance With This Order**

Strict compliance with this order and its requirements is mandatory. This Court will strictly enforce the requirements of this pretrial order, especially those pertaining to motions in limine, jury instructions and a verdict form. Counsel and parties are subject to sanctions for failure to fully comply with this order and its requirements. This Court will modify this order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e).

IT IS SO ORDERED.

Dated:   **February 11, 2015**             **/s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE